■ In the Matter of LUIS SANCHEZ, Petitioner, v THOMAS

COUGHLIN, as Commissioner of the New York State Department of Correctional Services, et al., Respondents.—Yesawich, Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Ulster County) to review a determination of respondent Commissioner of Correctional Services which found petitioner guilty of violating certain disciplinary rules.

On Father's Day 1985, a .22-caliber revolver was found in the bottom of a package addressed to petitioner who was then an inmate at Eastern Correctional Facility. The package was 1 of 2 containing foodstuffs brought to the facility by a group including petitioner's wife, his daughter Leticia, his son Robert and the latter's girlfriend.

Upon arriving at the visitor's center, Leticia filled out a label in her mother's name and gave it to a correction officer, who indicated that he would affix the label to petitioner's packages. The packages, which were open, were then taken to another room, to which prisoners were not allowed access, where, out of the presence of visitors, the various packages destined for inmates were searched by officers. The gun was discovered in a package bearing petitioner's label; no fingerprints were taken from the gun.

The foregoing prompted officials to terminate the visit of petitioner's family and confine petitioner to the special housing unit. Thereafter, petitioner was charged and, following administrative hearings at which petitioner, his wife and Leticia testified and denied any complicity in the offenses, petitioner was found guilty of violating institutional rules prohibiting attempted smuggling and conspiracy to promote prison contraband. The penalty ultimately imposed was one year in the special housing unit and one year loss of good time and related privileges.

As framed by respondents, the issue presented is whether substantial evidence supports the determination that petitioner was guilty. The substantial evidence standard is met where " 'in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs' " *(People ex rel. Vega v Smith,* 66 NY2d 130, 139, quoting *National Labor Relations Bd. v Remington Rand,* 94 F2d 862, 873 [Hand, J.], *cert denied* 304 US 576).

This case hinges upon the propriety of the inference drawn by the Hearing Officer that because a gun was found in an open package provided by petitioner's family and intended for him, but which he neither possessed nor, so far as this record

is concerned, knowingly controlled, it necessarily follows that he was implicated in a conspiracy designed to bring contraband into the facility.

Significantly, the record is barren of any evidence linking petitioner with the revolver. In lieu of such evidence, respondents would have us engage in the further supposition, undocumented, that it is not unreasonable to assume that inmates, like petitioner, who have a good disciplinary record and relative freedom in the facility, would be enlisted by fellow inmates to obtain weapons for them. There being no proof that petitioner conspired with other prisoners to accomplish this end, adopting respondents' assumption works an unacceptable result in that it justifies punishing petitioner not for what he in fact did, but what it is speculated and surmised he did.

This is not to say that respondents were without a remedy for this infraction; they proceeded to have charges lodged against the son and also revoked the visitation privileges of petitioner's wife. However, a Grand Jury found insufficient evidence to indict and, following a visitation hearing, the visitation privileges of petitioner's wife were restored.

As for our decisions in *Matter of Kotler v LeFevre* (111 AD2d 584), *Matter of Cunningham v Coughlin* (97 AD2d 930, 931) and *Matter of Pike v Coughlin* (78 AD2d 937), relied upon by respondents, we find them factually distinguishable. They turned upon a showing that the contraband was within the prisoners' cells, giving rise to a virtually irresistible inference of inmate impropriety. The circumstances presented in the instant case are conceptually and factually akin to *Matter of Trudo v LeFevre* (122 AD2d 319). There it was observed that where the petitioning inmate had "control" over a locker containing proscribed items, the facility's case was made as to those items. But as to items outside his control, the inmate could not be fairly said to "possess" the contraband *(see, supra,* at 320).

Lastly, we note that in addition to having this entire incident expunged from his correctional and parole records and seeking restoration of all good-time allowance, relief which we do grant, petitioner also asks for relief which is not awardable, i.e., full back prison wages *(see, Matter of Sabo v Racette,* 124 AD2d 920, 921).

Determination annulled, without costs, and petition granted to the extent that respondents are directed to expunge all references to this proceeding from petitioner's files and to

restore any good time taken from petitioner as a result thereof.

Mahoney, P. J., Casey, Yesawich, Jr., and Harvey, JJ., concur.

Kane, J., dissents and votes to confirm in a memorandum. Kane, J. (dissenting). I would confirm the administrative determination finding petitioner guilty of violating institutional rules prohibiting *attempted* smuggling and *conspiracy* to promote prison contraband since, in my opinion, the determination is supported by substantial evidence.

The package in which the gun was found was intended for petitioner. It was delivered to the prison by his family; they labeled it as a package for him and left it with prison officials in his name. The above creates an inference that petitioner participated and such an inference created a question of credibility which was for respondents to resolve *(see, Matter of Di Maria v Ross,* 52 NY2d 771; Richardson, Evidence § 56, at 34 [Prince 10th ed]; *see also, People ex rel. Vega v Smith,* 66 NY2d 130, 139-142).